## 60629. JOHNSON v. LANDING.

McMurray, Presiding Judge.

In 1977, Artie Williams was in the process of selling certain residential property located in Savannah, Georgia, to James E. Landing. The property was being sold by and through a real estate firm. A Veterans Administration loan was being obtained upon the property, and one of the requirements of the Veterans Ad-

ministration was a termite clearance letter. The real estate firm contacted the J. H. Johnson & Son Exterminating Company, owned by Joseph Johnson, to make a termite inspection upon this property. Thereafter Mr. Johnson, by and through his employees, made such inspection and on August 12, 1977, issued a termite clearance letter addressed to whom it may concern after finding no active termite infestation on the property.

The inspection was alleged to be in compliance with the rules of the Structural Pest Control Commission of Georgia. See Code Ann. Ch. 84-34, otherwise known as the Structural Pest Control Act (Ga. L. 1955, pp. 564, et seq., as thereafter amended). Mr. Johnson contends that if there were any termite infestation damage to this property same could not have been discovered during the inspection of the property.

After he purchased the property, Landing contends that in 1978 he found considerable damage to his roof when it began to leak and that the roof and the interior of his house were found to be extensively damaged by termites. Landing then filed suit for damages against Artie Williams, the seller, and Joseph H. Johnson, d/b/a J. H. Johnson & Son Exterminating Company, the termite inspector and supplier of the Veterans Administration termite clearance letter. The suit was in several counts.

Count 1 sought damages against defendant Williams alone for fraud and for punitive damages to deter defendant from future similar acts, alleging structural damage of $3,676 to repair the roof and $8,000 to repair the interior damage. Count 2 sought damages against defendant Johnson for failing to discover the extreme termite infestation which subsequently cost the plaintiff $11,676 to repair the dwelling (negligence) and for $25,000 punitive damages due to his bad faith. Count 3 alleged that the defendant Johnson had breached his contract with the plaintiff in failing to find the premises were infested with termites and termite damage, seeking damages for the breach in the amount of $11,676. Count 4 sought damages against the defendants Johnson and Williams for conspiracy, fraud, and concealment of the damage to the home, seeking damages, actual and punitive, for the conspiracy and bad faith, and for $10,000 as reasonable attorney fees and expenses of litigation.

Defendant Johnson answered the complaint, generally denying the claim and admitting only jurisdiction. In his fourth defense to Count 2 he admitted conducting a careful visual inspection of accessible structural members of the dwelling on or about August 12, 1977, alleging the inspection was conducted in compliance with the rules of the Structural Pest Control Commission of Georgia, that he complied fully with the rules and regulations prescribed therein; that

he was not liable to the plaintiff in any amount whatsoever and that if any damage was allegedly caused by termite infestation prior to this inspection same could not have been discovered during said inspection. With reference to Count 4, the defendant Johnson added that any damage allegedly caused to the plaintiff, if any, was the result of water damage or caused by a person or persons unknown to the defendant and over whom he had no control and that at all times he had exercised ordinary care in the inspection.

The case proceeded to trial in which special verdicts were submitted to the jury. The court instructed the jury that it had eliminated Counts 3 and 4 and the jury was not to consider these counts in their deliberations. The jury returned a verdict against both defendants Johnson and Williams, finding $8,500 actual damages only and no punitive damages. Defendant Williams did not appeal but has filed bankruptcy proceedings seeking a discharge in bankruptcy.

Defendant Johnson filed a motion for judgment notwithstanding the verdict and alternatively for a new trial. The motion was thereafter amended and after a hearing as to both the motion for judgment notwithstanding the verdict, as amended, and the motion for new trial, as amended, both were denied. Defendant appeals. *Held:*

1. In the case sub judice, the defendant Johnson, as an exterminator, contends he gratuitously made a free inspection of the residential dwelling. He contends the gratuitous inspection was made at the realtor's request "on account of business" explaining that "if the buyer of the home or the seller of the home or anybody concerned didn't have them one [exterminator] in mind that they wanted to use, and maybe the seller was new or something, . . . [the realtor] . . . would say, 'I use Johnson.' " He further explained that there would have been "about two hundred dollars in just the treatment on this house for me if there'd have been trouble found with this house of any kind . . . [b]esides home improvements, I stood a chance of getting that job, too, if it had come, putting bids on this . . ." Nevertheless, there is responsible authority that gratuitous inspections may be made under such circumstances so as to create an enforceable duty to persons known and unknown. One who gratuitously renders service to another is subject to liability for harm caused to the other by his failure, while so doing, to exercise with reasonable care such competence and skill as he possesses. One may sue in this state for negligence in the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do; that is, such negligence consists of either an omission to do an act which ought to be done, or the omission to

perform properly what one undertakes to perform. See Code §
105-201, defining ordinary negligence and ordinary diligence. See
also *Southern R. Co. v. Chatman,* 124 Ga. 1026, 1036 (53 SE 692);
*Wright v. Southern R. Co.,* 62 Ga. App. 316 (3) (7 SE2d 793); *Newill
v. Atlanta Gas-Light Co.,* 48 Ga. App. 226, 230 (172 SE 232); *Womack
v. Central Ga. Gas Co.,* 85 Ga. App. 799, 803 (70 SE2d 398); *Emory
Univ. v. Lee,* 97 Ga. App. 680, 691 (104 SE2d 234); *Thomas v.
Williams,* 105 Ga. App. 321, 326-329 (3) (124 SE2d 409).

Here the defendant Johnson enumerates error to the denial of
his motion for directed verdict at the close of plaintiff's case as well as
to the denial of his motion for directed verdict as to Count 2 in which
a verdict and judgment were returned against him. Defendant
contends that negligence is not performed but is a matter for
affirmative proof and the plaintiff simply did not prove him negligent
in the performance of the duty he undertook in making an inspection
and in issuing the termite clearance letter. The defendant Johnson
had stated in the termite clearance letter and so testified that based
on a careful visual inspection of accessible areas, that is, by "sounding
of accessible structures, there is no evidence of termites or other
wood-destroying insect infestation in the subject property, and if
such infestation previously existed, it has been corrected and any
damage due to such infestation has been corrected or, alternatively,
has been fully disclosed as follows." Thereafter appeared the word
"none."

Plaintiff presented evidence that within approximately seven
months following the closing of the purchase of this dwelling he
discovered extensive damage to his house and in renovating the
dwelling due to excessive leaks, found numerous holes in the plywood
of the roof of the dwelling, rafters, and ceiling joists and "the termites
had eat it up." Defects in this area had previously been remedied by
adding sheets of tin, asbestos siding and a linoleum rug, all of which
would appear to be repairs made by defendant Williams, who was the
only previous owner of the dwelling. This of course has no bearing
upon the alleged negligence of the defendant Johnson, the ex-
terminator.

Following discovery of the termite damage to the roof, the
plaintiff looked more closely at the interior of his home and
discovered further termite damage in the bathroom area and in the
eaves of the dwelling as well as the cornices. As to the bathroom area,
plaintiff testified "termites had done eat it slap up." The testimony
was that upon exposure he could see the bathroom walls were eaten
up by termites although the termites were not present. The termite
damage was excessive in that area and the damage was not new but
the wood had been in that condition over "a long period of time." As

to the outside of the house with reference to the cornices, both the soffit and facia were "just like tissue paper."

While the defendant Johnson testified extensively to the speed with which termites may damage a dwelling, nevertheless, a jury issue was made as to the competence of his inspection of the premises. While the testimony was in conflict as to whether or not he had made a proper and complete inspection in August 1977, the conflicting testimony created a jury issue as to whether or not he had exercised ordinary diligence in making the inspection. There is no merit in the enumerations of error that the trial court erred in denying the motions for directed verdict. See *Speir v. Williams,* 146 Ga. App. 880 (1), 881 (247 SE2d 549) and cases cited therein.

2. Defendant Williams was sued for fraudulent concealment in Count 1. Defendant Johnson was sued for negligent inspection in Count 2. The defendant Johnson herein contends that the trial court committed error in furnishing the jury a proposed form of verdict, as revised, wherein a verdict could be rendered against both defendants Johnson and Williams, as there is no question that a concert of action is necessary for the establishment of a joint tortfeasor relationship. The law is clear that if separate and independent acts of negligence of two or more persons or corporations combine naturally and directly to produce a single indivisible injury other than a nuisance, and if a rational basis does not exist for an apportionment of the resulting damages among the various causes, then the actors are joint tortfeasors, that is, jointly and severally liable for the full amount of plaintiff's damages, notwithstanding the absence of voluntary and intentional concert of action among them. See *Gilson v. Mitchell,* 131 Ga. App. 321, 330 (205 SE2d 421), affd., 233 Ga. 453 (211 SE2d 744), and cases cited therein. See also *Cline v. Aetna Cas. &c. Co.,* 137 Ga. App. 76, 77 (2) (223 SE2d 14); *Smith v. McLendon,* 142 Ga. App. 608, 609-610 (236 SE2d 692).

Defendant Johnson contends that there was no way for these two defendants to be classified as joint tortfeasors. He contends that the two defendants never met, and under no circumstances could he have discovered the material damage to the dwelling without destruction of defendant Williams' residence. However, from the testimony offered, this material issue was for jury determination as stated in Division 1 above, and there was evidence to support the findings of the jury even though one party was sued for fraud and the other for negligence, completely independent torts. The jury was given the choice of absolving each defendant jointly or separately or in finding both at fault. Based upon the above cases with reference to the fact that concert of action is not necessary for the establishment of a joint tortfeasor relationship, there is no merit in this complaint.

3. During the deliberations of the jury, the foreman called the attention of the trial court to the fact that there was no place in the form of the verdict to provide for finding a percentage against one of the co-defendants and another percentage against the other. The court then instructed the jury that it might not say, "so much for this one or so much for that one. You give a lump sum amount there and, assuming that you have found against both of them, you would give a lump sum, or if you find just against one, you give a lump sum, the same figure." The foreman then asked the following question: "Are we then to understand that whatever amount we give is to be — if we say both are guilty, are we to assume it's shared equally?" The court then replied: "That is a presumption. Now, the plaintiff has the option, then, of collecting it against either or both, but the other party — let's say the plaintiff goes against one party, that party — that defendant can then go through a procedure to claim contribution from the other defendant to get an equal share, so the idea is, of course, that they would share equally in a verdict of that nature, but the plaintiff doesn't have to collect it against both of them if he doesn't want to or can't or for some other reason. Either would be liable for the full amount." At the end of this further charge, objection was made to this charge on contribution by counsel for defendant Johnson. A motion for mistrial was also made and denied. The judge here defined contribution for the benefit of the jury. While possibly gratuitous, no harmful error is shown. The evidence disclosed a single indivisible injury to the dwelling, and the jury found both defendants to be at fault. A joint tortfeasor relationship was determined by the jury.

4. The various other enumerations of error have not been argued although the ruling in Division 1 covers the substance thereof. Hence the trial court did not err in denying the motions for judgment notwithstanding the verdict or in the alternative for a new trial. The verdict cannot be said to be contrary to law, contrary to evidence, or strongly and decidedly against the weight of the evidence as there was evidence to support the finding of the jury.

*Judgment affirmed. Banke and Pope, JJ., concur.*

DECIDED FEBRUARY 3, 1981.

*Thomas J. Mahoney, Jr.,* for appellant.
*John R. Calhoun, George M. Hubbard III,* for appellee.