Morris HOUSTON, et al., Appellants,

v.

MIKE BLACK AUTO SALES, INC., et al., Appellees.

No. 13–89–364–CV.

Court of Appeals of Texas, Corpus Christi.

April 19, 1990.

Robert P. Houston, Houston, Marek & Griffin, Victoria, for appellants.

James A. Smith, Port Lavaca, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This suit is submitted under the provisions of the Deceptive Trade Practices Act. Tex.Bus. & Com.Code Ann. 17.41 et seq. (Vernon 1987). Appellants, Morris and Hazel Houston, appeal the directed verdict rendered in favor of appellees, Mike Black Auto Sales, Inc. and Mike W. Black, individually. By a single point of error, appellants allege that the trial court erred by preventing the jury from deciding the issues presented in the case because there was some evidence to support each element of their cause of action against appellees. We reverse the judgment of the trial court and remand for new trial.

■ In reviewing the granting of a directed verdict, an appellate court must consider all evidence in the light most favorable to the party against whom the instructed verdict was granted and disregard all contrary evidence and inferences. All evidence supporting the non-movant's allegations must be accepted as true and only when no fact issue remains for the trier of fact to decide will the verdict be allowed to stand. *Qantel Business Systems, Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303–304 (Tex.1988); *C.S.R., Inc. v. Industrial Mechanical, Inc.,* 698 S.W.2d 213, 216 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Blaeser Development Corp. of Texas v. Aldridge,* 664 S.W.2d 830, 831 (Tex.App.—Corpus Christi 1984, no writ); *see also Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

The record does not reveal the reasons why the trial court granted the directed verdict. Nevertheless, we will review all of the evidence to determine whether appellants presented evidence either to support each element of their cause of action or to raise a material fact issue on each element.

Appellants planned to purchase a used low-mileage, van-type automobile with standard transmission. At first, they could not find any cars meeting their requirements. Appellants then visited the Mike Black Auto Sales lot in Bay City, Texas to

inspect a used 1985 Dodge Caravan. The automobile's odometer indicated that it had been driven approximately 38,000 miles. While appellants looked at the car, a salesman (later identified as Mike Black) walked out to greet appellants. Appellants inquired about the car's origination and briefly chatted with Black about test driving the car. Appellants subsequently left the lot to eat lunch and returned that afternoon for a test drive.

Lisa Niles, one of Black's salespersons, attended to appellants' needs and discussed the car after their test drive. Shortly thereafter, Black approached the group and began to negotiate a sale with appellants. When appellants complained about a jerking motion created when the brakes were applied, Black replied that he would repair the brakes. He then offered to sell the car to them for $7,400.00. Mr. Houston replied that this price was too high.

Mrs. Houston informed Black that the couple sought a later model car because their 1980 model Volkswagen had approximately 89,000 miles to its credit and that a more dependable car was necessary when they vacationed in Colorado. She stated that, to facilitate towing the car behind their motor home to Colorado, appellants required a car equipped with a standard transmission. Mrs. Houston summarized the situation saying, "so we want something that's low mileage and a little bit newer but we don't want a new car." Black replied, "That's the car for you right there." After discussing the possible installation of air conditioning and cruise control, Black offered the vehicle to appellants for $6,600.00. Appellants left the sales lot to consider Black's offer.

Several days later, appellants contacted Black by telephone and offered $7,200.00 for the vehicle if Black would install cruise control and air conditioning units and repair all known mechanical problems. Mr. Houston then informed Black that he would take the car to another mechanic for an independent mechanical inspection. Black accepted Mr. Houston's offer and also agreed to the inspection. As appellants prepared to take the car, Black instructed Lisa to replace the black-print temporary license plates with the red-print Buyer's plates indicating that the automobile had been sold. The red plates named appellants as the vehicle's new owners. The parties agreed that appellants would deliver the vehicle to a garage designated by Black for the cruise control and air conditioning installations after the independent inspection.

The independent inspection revealed only minor problems; however, shortly thereafter and prior to delivering the vehicle to the garage for the new units installations, Mrs. Houston discovered a sales and disclosure receipt inside the vehicle from T.A. Littlefield Auto Sales to Mike Black Auto Sales indicating that the actual mileage for the car totalled approximately 83,350 miles. Appellants promptly contacted an attorney but did not return the automobile to appellees. Over the next few days, appellants received several phone calls from Lisa Niles but said nothing to her about the mileage discrepancy because their attorney had instructed them to remain silent. Finally, Mrs. Houston informed Lisa that appellants no longer wished to purchase the vehicle and would return it to the sales lot.

The evidence reveals that Mike Black purchased the automobile in question from an automobile auction in San Antonio, Texas. Black testified that he brought the automobile to his sales lot and promptly installed a used odometer because the original one was broken. He stated that used odometer gauges were cheaper than new ones and that this particular used gauge indicated approximately 38,000 miles were travelled. Black neither adjusted the odometer back to zero miles nor advanced the meter to indicate that the true mileage exceeded 83,000 miles. Nevertheless, Black did take the car to a garage for a new annual inspection sticker and "assumed" that the new sticker reflected the mileage indicated by the new odometer gauge.

Black admitted that he never indicated to appellants that the car's actual mileage differed from the mileage reflected by its odometer or that the odometer was not the

original one installed in the car. Both appellants and Black admitted that they never specifically discussed the car's mileage, rather, the term "low mileage" was used. Black testified that he believed this lawsuit resulted from his misunderstanding that Lisa Niles had discussed with appellants the car's mileage while she thought he had done so.

■■■■ A "consumer" under the Texas Deceptive Trade Practices Act (DTPA) is an individual who seeks or acquires by purchase or lease, any goods or services, and those goods or services purchased or leased must form the basis of the complaint. *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987); *Rodriguez v. Ed Hicks Imports*, 767 S.W.2d 187, 191 (Tex.App.—Corpus Christi 1989, no writ); Tex.Bus. & Com.Code Ann. 17.45(4) (Vernon 1987); *see also March v. Thiery*, 729 S.W.2d 889, 896 (Tex.App.—Corpus Christi 1987, no writ). The prospective purchaser at least must have approached the seller with the subjective good faith objective of purchasing and show that he possessed the capacity to consummate the transaction, although money did not change hands. *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180, 184–85 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see also First Texas Sav. Ass'n v. Stiff Properties*, 685 S.W.2d 703, 705 (Tex.App.—Corpus Christi 1984, no writ).

■■■ Appellants agreed to purchase the auto in question for $7,200.00 if it passed the independent mechanical inspection. They wanted the automobile as a replacement car to take with them when they vacationed in Colorado. Appellants testified that they took possession of the auto believing that they had committed themselves to its purchase, until they discovered the odometer mileage discrepancy and sought advice from counsel. As such, appellants qualified as consumers to bring this DTPA suit.

■■■ Appellants alleged that appellees violated the DTPA laws by (a) misrepresenting a material fact; (b) changing the odometer gauge to falsely reflect a new mileage;

and (c) failing to disclose at the time of the trade that information concerning the automobile which might have caused appellants not to enter into the transaction. Both appellants testified that when they told Mike Black that they were searching for a "low mileage" automobile Mike Black responded saying, "That's the car for you". Additionally, appellants both testified that they would not have agreed to purchase the vehicle had they known it had actually travelled over 83,000 miles.

Rhonda Schutz, the subsequent owner of the Caravan testified that Black never informed her that the auto had actually travelled over 83,000 miles. This evidence, in addition to Black's testimony that he replaced the auto's old odometer gauge for a used one and that he did not tell appellants or the annual inspection person about the change raises a fact question regarding appellee's representations. We hold that these facts and the most favorable inferences that can be drawn from them are sufficient to warrant a jury question regarding whether appellees did, in fact, misrepresent material facts or participate in deceptive practices to induce appellants to purchase the auto.

■■■ As a final matter, we discuss whether there is any evidence to support the damage element in this cause of action. A consumer who prevails in a DTPA cause of action is entitled to actual damages found by the trier of fact. Tex.Bus. & Com.Code Ann. 17.50(a), (b) (Vernon Supp. 1990). "Actual damages" refers to those types of damages available under common law, namely, "out of pocket" damages, measured by the difference between the value of that which he has parted with and the value of that which he has received, or "benefit of the bargain" damages, allowing recovery of the difference between the value as represented and the actual value received. *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984); *Jim Walter Homes, Inc. v. Mora*, 622 S.W.2d 878, 883 (Tex.App.—Corpus Christi 1981, no writ); *see also Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980). The consumer-plain-

tiff may recover under the rule which allows the greater recovery. *Johnson v. Willis*, 596 S.W.2d 256, 263 (Tex.Civ.App.—Waco 1980), *writ ref'd per curiam*, 603 S.W.2d 828 (Tex.1980).

■ Mrs. Houston testified that she and her husband lost approximately $36.00 in out-of-pocket expenses as a direct result of dealing with appellees regarding the auto purchase. Additionally, the evidence indicated that appellants were entitled to recover damages under the "benefit of the bargain" rule.

The record before us indicates that there was some evidence supporting all elements of appellants' cause of action. We hold that the trial court erred by not allowing the jury to decide whether appellees engaged appellants in deceptive, misleading, or unfair trade practices to sell the Caravan automobile in question.

The judgment of the trial court is REVERSED and the case is REMANDED for new trial.